FILED
2012 Jul-17  AM 10:10
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

MARION WATERS, on his own          ]
behalf and on behalf of all others   ]
similarly situated,                  ]
                                     ]
  Plaintiffs,              ]
                                     ]
v.                                   ]  2:07-cv-00394-LSC
                                     ]
COOK'S PEST CONTROL, INC.,           ]
                                     ]
  Defendant.                ]
                                     ]
                                     ]

## MEMORANDUM OF OPINION

The Court has for consideration the parties' request for final approval of a class

settlement, approval of a class representative service award, and award of attorneys' fees.

(Docs. 129, 131, 133.) The Court preliminarily approved the parties' Settlement Agreement

(the "Settlement") on January 27, 2011.[1]  (Doc. 123.)  On May 25, 2012, an evidentiary

fairness hearing was held pursuant to Federal Rule of Civil Procedure 23(e)(1)(A), which

mandates judicial review of any "settlement, voluntary dismissal, or compromise of the

claims, issues, or defenses of a certified class."  On July 5, 2012, the Court heard argument

---

[1]This Memorandum of Opinion incorporates by reference the definitions used in the
Settlement and unless otherwise noted, all applicable terms used in this Opinion shall have the same
meanings as those in the Settlement.

on Class Counsel's Motion for Approval of Attorney Fees and Expenses.  The Court has thoroughly examined and considered: (1) the parties' briefs and evidentiary submissions; (2) the arguments and evidence presented at the fairness hearing conducted on May 25, 2012; (3) the arguments and evidence presented at the attorney fee hearing held on July 5, 2012; (4) all objections; and (5) the Court's own review of the case and procedural record. For the following reasons, the Court finds that the proposed Settlement is fair, reasonable, and adequate and it is due to be approved.  Accordingly, the Court enters this Memorandum Opinion and Final Judgment, which approves the Settlement in full.  The Court also finds that it is fair and reasonable to award Marion Waters a Service Award and Class Counsel fees and expenses.   The Court makes the findings of fact and conclusions of law set forth below.

I.      Background.

     A.     Procedural History.

This class action was filed by Plaintiff Marion Waters ("Named Plaintiff"), on his own behalf and on behalf of all other persons similarly situated ("Class Members") (collectively, "Plaintiffs"), on February 28, 2007. (Doc. 1.)  The Complaint, as amended on July 17, 2007, asserts claims for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq.*, and 42 U.S.C. §1981, for failure to hire based on race.  (Doc. 3.) Specifically, Plaintiffs sought monetary damages and equitable relief to redress alleged

racially discriminatory practices in Defendant's application process.  Plaintiffs accused Cook's Pest Control, Inc. ("Cook's"), of: (1) discouraging job applications by African-Americans by telling callers with a dialect or diction that may indicate they are African-Americans, or African-Americans who apply in person, that there are no jobs available; (2) discouraging applications by African-Americans by stating that applications for jobs must be placed on file at every office where employment is sought because African-Americans tend to be less financially able to travel to all offices; (3) discouraging job applications from African-Americans by using only non-African-Americans in print and television advertising; (4) failing to employ or promote African-Americans into management positions; (5) designating race on employment applications; (6) staffing application offices with white workers to discourage job applications from African-Americans; (7) discouraging African-Americans from applying for jobs by announcing that an algebra, geometry, and math test is required; (8) using "good old boy," "word of mouth," or "tap on the shoulder" systems to avoid recruiting, hiring, or promoting African-Americans; (9) using pen and paper math tests as selection criteria, which have a racially disparate impact on African-Americans, and are unnecessary due to the automatic measuring of modern pest control equipment; (10) utilizing a cut-score on screening tests; and (11) avoiding hiring African-Americans by using an overall system of subjective selection criteria.  (*Id*. at 5-7.)

Cook's promptly moved to dismiss all of Plaintiffs' claims.  (Doc. 7.)  That motion was denied on January 28, 2008.  (Doc. 25.)  Cook's answered the Complaint on February 11, 2008.  (Doc. 27).  On June 5, 2008, Defendant Cook's filed  a motion for  summary judgment (Doc. 39), which was denied without prejudice to refile on December 9, 2008 (Doc. 59).  On December 7, 2010, the Court granted the parties' joint motion to stay this action pending mediation. (Doc. 110.)

Extensive discovery on the merits has been conducted regarding disparate impact and pattern and practice disparate treatment race discrimination claims of the Named Plaintiff and Class Members.  The parties have employed experts to assist in evaluating data and statistical evidence.  Moreover, the parties have litigated contentious motions to compel discovery and motions for protective orders.

B.      Settlement Negotiations.

Counsel for the parties participated in mediation beginning in December 2010.  The parties chose Hunter R. Hughes of the law firm Rogers & Hardin, LLP, in Atlanta, Georgia, as mediator. The resulting Settlement Agreement is the product of litigation, discovery, and a protracted and intensive mediation process.  The parties reached an agreement to settle in October 2011, and they filed a Joint Motion  for  Preliminary Approval of the Settlement with this Court on November  3,  2011.  (Doc. 120.)  The Court preliminarily certified the settlement class and approved the form of notice on January 27, 2012.  (Doc. 123.)  The

Court appointed Plaintiffs' counsel as Class Counsel; Tommy Warren and Settlement Services, Inc. ("SSI"), as Claims Administrator; and Professor James Coleman, of Duke University, as Monitor.  (*Id.*)

C.    Class Notice.

SSI mailed a total of 14,563 Class Notices to all potential class members on February 27, 2012.  Because all Cook's employment applications did not reflect the race of the applicant, notices were mailed to all known applicants during the applicable settlement time period, rather than merely to African-American applicants.  The Class Notices mailed to applicants repeatedly stated that non-African-Americans are not included in the class and should not submit a claim form.  When Class Notices were returned as undeliverable, SSI attempted a trace of the potential class member and remailed the Class Notice if an alternative address was located.  SSI remailed 2,605 Class Notices to new addresses after they were returned as undeliverable.  SSI also remailed 415 Class Notices to forwarding addresses provided by the U.S. Postal Service.

SSI also placed a newspaper notice approved by the Court in the online and print versions of newspapers of general circulation in each county where Cook's has a district office.  The newspaper notices ran between February 28 and March 2, 2012, in 27 newspapers (of which 19 had online versions), in four states: Alabama, Georgia, Mississippi, and Tennessee.  These four states are the only states in which Cook's does business.  The

Settlement also received press coverage in the *Decatur Daily*, *Chattanooga Times Free Press*, and various online news services and blogs.  Because Cook's generally preserved its job applications during the applicable settlement period, notice by publication was intended to reach only those Class Members whose applications may have been inadvertently lost or destroyed.

Both the mailed notice and newspaper notice notified Class Members of the nature of the action, the class claims, the right to enter an appearance through an attorney, the right to opt out and the time and manner for doing so, and the binding effect of a class judgment on Class Members, in compliance with the  requirements of Fed. R. Civ. P. 23(c)(2)(B)(i) - (vii).  The Class Notices also directed Class Members to a toll-free number they could call for additional information.

SSI set up a limited-access website with information and documents related to this case.  Access to the website required a user name and password, which were obtained by contacting SSI using the toll-free number set forth in the Class Notices.  The website contained general information about the case; a "Frequently Asked Questions" section; and links to the Claim Form, Claim Form Instructions, Fair Credit Reporting Act Disclosure and Authorization Form, the Settlement Agreement, and the Class Notice, all of which can be downloaded by the viewer.  The website also included sections with relevant case deadlines; instructions regarding Class Member address changes; instructions for opting out

or filing objections to the Settlement; and contact information for SSI, Class counsel,

Cook's counsel, and the Court.

D.    Compliance with CAFA.

When a proposed class action settlement is filed in court, the Class Action Fairness

Act of 2005 ("CAFA"), 28 USC §§1332(d), 1453, and 1711 *et seq.*, requires a defendant to

"serve upon the appropriate State official of each State in which a class member resides and

the appropriate Federal official, a notice of the proposed settlement consisting of--

> (1) a copy of the complaint and any materials filed with the complaint and any amended complaints (except such materials shall not be required to be served if such materials are made electronically available through the Internet and such service includes notice of how to electronically access such material);
> (2) notice of any scheduled judicial hearing in the class action;
> (3) any proposed or final notification to class members of--
>> (A)(i) the members' rights to request exclusion from the class action; or
>> (ii) if no right to request exclusion exists, a statement that no such right exists; and
>> (B) a proposed settlement of a class action;
> (4) any proposed or final class action settlement;
> (5) any settlement or other agreement contemporaneously made between class counsel and counsel for the defendants;
> (6) any final judgment or notice of dismissal;
> (7) (A) if feasible, the names of class members who reside in each State and the estimated proportionate share of the claims of such members to the entire settlement to that State's appropriate State official; or
> (B) if the provision of information under subparagraph (A) is not feasible, a reasonable estimate of the number of class members residing in each State and the estimated

proportionate share of the claims of such members to the entire settlement; and

(8) any written judicial opinion relating to the materials described under subparagraphs (3) through (6).

28 U.S.C §1715(b).  CAFA also requires:

An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under subsection (b).

*Id.* §1715(d).

Pursuant to these obligations, Cook's served appropriate notice on U.S. Attorney General Eric Holder on February 6, 2012.  Cook's also served similar notices on state officials on February 6, 2012.  Under 28 U.S.C. § 1715(a)(2), an "appropriate State official" is:

the person in the State who has the primary regulatory or supervisory responsibility with respect to the defendant, or who licenses or otherwise authorizes the defendant to conduct business in the State, if some or all of the matters alleged in the class action are subject to regulation by that person.  If there is no primary regulator, supervisor, or licensing authority, or the matters alleged in the class action are not subject to regulation or supervision by that person, then the appropriate State official shall be the State attorney general.

Because Cook's did not know which states or territories might be the residence to all potential class members, it served notices to the Attorney Generals of all fifty states and

each U.S. territory, and to the entities in every state and territory responsible for regulating the pest control industry.

When it later came to light that a few names were left off the known list of potential class members in Alabama, Cook's mailed a supplemental notice to the U.S. Attorney General, Alabama Attorney General, and the Commissioner of the Alabama Department of Agricultural Industries on February 8, 2012, explaining the error and noting the names previously omitted.

After the Court approved changes to the Class Notices to be mailed and published, Cook's sent another supplemental notice to the U.S. Attorney General and appropriate state and territorial officials on February 14, 2012, which included copies of the revised Class Notices.  All supplemental notices were served more than 90 days prior to any possible entry of a final order approving the Settlement.  Not a single official has taken action to oppose the Settlement.

E.      Reaction to the Settlement from the Class.

As of May 8, 2012, SSI fielded approximately 908 calls on the toll-free number regarding the proposed settlement, and gave out about 272 user names and passwords to the website. SSI mailed out approximately 558 claim form packets in response to requests received on the toll-free number, and numerous other potential class members have downloaded claim forms from the website.

As of the claims deadline, SSI received 495 claim forms. The vast majority of the claim forms appear to be valid. Only nine claims forms require disqualification on their face: seven potential claimants answered that they did not have a high school diploma or GED at the time of application, and two individuals did not have a valid driver's license.

There are a number of claims that will require further investigation to determine eligibility. Twenty-eight claimants answered that they had felony convictions, but it is unclear whether the convictions occurred before or after they applied for employment with Cook's. Three claimants answered that they were hired by Cook's after applying. Further information is needed to determine when these individuals were hired. A few claimants answered that they did not apply for employment with Cook's during the Settlement Period. The records will need to be checked to see if Cook's has applications for these individuals. Finally, 161 claimants did not submit any proof confirming their African-American race. Follow-up will be necessary to ensure that valid claims are not denied based on an accidental omission of paperwork. Because the terms of the Settlement arguably preclude payment based on incomplete paperwork, the parties have proposed that the Court include a provision in the Consent Decree giving the Claims Administrator the authority to investigate and seek further information from claimants, if necessary, to determine eligibility. The Court agrees, and that language will be added.

The Settlement has met with overwhelming approval by the Class Members.  The deadline for objections and opt-outs was April 12, 2012.  No Class Members have objected or opted out.

F.     The Fairness Hearing.

At the fairness hearing scheduled on May 25, 2012, both parties represented to the Court that it was their position the Settlement was fair and reasonable in every respect. Proper notice of the hearing was provided to all parties and the Class Members.  At the hearing, all who appeared and wished to be heard were given an opportunity to present their positions and arguments.  No one appeared to object to the Settlement.

II.    Structure of the Settlement.

Although the Court has already given its preliminary approval, the Court is nonetheless required to undertake a rigorous analysis to ensure the parties' settlement is fair, adequate, and reasonable.  Fed.R.Civ.P. 23(e)(2).

The Settlement defines the Settlement Class as:

> All African-Americans who applied for employment at any Cook's location from March 1, 2005[,] through the date of preliminary approval, and who were denied employment, excluding all judicial officers or employees of the Federal Courts within the second degree of affinity; employees of Plaintiff's counsel; and any other person whose presence in the class would cause mandatory recusal of any judge assigned to the case.

The settlement fund consists of $2,500,000, which includes all costs and fees ("Settlement Fund"). Cook's is responsible for all costs and expenses of settlement administration.  Payment to the Settlement Fund consists of two installments.  One installment in the amount of $1.5 million will be paid on or before 30 days after the date of final approval of the Consent Decree, and will include payment of attorneys' fees. The remaining balance of the settlement payment will be paid no later than the end of the first week of January 2013.

The Consent Decree (or "Decree") will provide for a Rule 23(b)(2) and Rule 23(b)(3) settlement class that will cover all of Cook's facilities for all African-Americans who applied for the positions addressed in the Complaint. The Decree will also provide for a general release by the Named Plaintiff of all claims of every type.  The Named Plaintiff will receive an incentive payment in the amount of one and one-half times the maximum amount paid to a settlement class member, to be paid out of the Settlement Fund.  Payments to the remaining Class Members will be determined according to a points system. The Claims Administrator shall assign points to each Class Member who submits a valid, complete, and timely claim form based on the following formula: one point for having made application for employment to Cook's during the applicable Settlement period; one additional point for having made application for employment to Cook's more than once during the covered period, without regard to the

total number of times the Class Member may have made application within the covered period; one quarter of one additional point for each full calendar year since the first Covered Application was submitted; and ten additional points for having made a Covered Application to Cook's Decatur District Office. All points awarded to all Class Members shall be totaled, and the total funds remaining in the Settlement Fund after payment of all attorneys' fees and expenses, and the award to the Named Plaintiff, shall be divided by the total number of points to determine the value of each point. The settlement payment to which each Class Member is entitled shall be determined by multiplying the result of that calculation by the number of points awarded to that Class Member. However, no Class Member other than the Named Plaintiff shall receive a monetary payment exceeding one year's average pay for the highest-compensated class position (approximately $32,000). Moreover, the Claims Administrator may petition the Court to make adjustments to the awards calculations to relieve unforeseen anomalous, grossly inequitable, or suspected fraudulent results.

Distributions from the Settlement Fund will occur in such a way as to ensure that a Class Member receives only one payment. Each Class Member who receives compensation under the Decree will give a release of all claims relating to Cook's failure to hire them. All interest earned on the Settlement Fund shall be used to pay the costs of settlement administration or taxes on the interest. Class Counsel are entitled to apply

to the Court for an award from the Settlement Fund for payment of attorneys' fees and reimbursement of costs and expenses incurred in prosecuting this action.  In the event that there is any residual in the Settlement Fund after distributions, attorneys' fees, costs, and interest, the residual shall be donated to the Birmingham Chapter of the United Negro College Fund.

The length of the Decree shall be three years, but may be extended to a maximum of four years, to the extent necessary to resolve any challenges still pending with the Monitor at the end of three years.  The Decree will include the following terms:

(1)   With the assistance and approval of the Monitor, Cook's will establish objective, facially neutral hiring criteria that shall be used in the hiring process for the positions of sales, pest control technician, or termite technician during the term of the Decree.

(2)  Cook's will hire qualified applicants at each facility without regard to race.

(3)  Cook's CEO will issue to all employees a statement affirming Cook's antidiscrimination policy and describe  its implementation and the reporting process if employees believe a violation has occurred.

(4)  Cook's will institute periodic training of its hiring and other management and supervisory personnel relative to the terms of the Decree, nondiscriminatory hiring, and other terms and conditions of employment.

(5) Cook's will put in place mutually agreed upon record keeping procedures that shall include the compilation by each facility of applicant flow data by race, the number of Monitored Position hires by race, and a summary of the reasons for selection/rejection of each applicant for the Monitored Positions.

The Decree will also enjoin Cook's, and its officers and managers in their official capacities:

(1) from taking any action which violates the terms of the Decree and from engaging in any employment practice that has the purpose or the effect of violating the terms of the Decree or discriminating against African-Americans on the basis of their race in violation of 42 U.S.C. §1981 or Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000 *et seq.*; and

(2) from engaging in, implementing or permitting any action, policy or practice which has the purpose or effect of retaliating against any prospective, current or former employee because of his/her participation as a party, claimant, witness or declarant in this action.

III.    Fairness, Reasonableness, and Adequacy of the Proposed Settlement.

This Court "has a heavy duty to ensure that any settlement is 'fair, reasonable, and adequate.' " *Piambino v. Bailey*, 757 F.2d 1112, 1139 (11th Cir. 1985). "The Court must be exacting and thorough in analyzing whether the settlement is in the best interests of

class members." *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, 843 (E.D. La. 2007) (citing *Manual for Complex Litigation* (Fourth) § 21.61 (2004)).   "A 'mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law' will not suffice." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (quoting *Protective Comm. v. Anderson*, 390 U.S. 414, 434 (1968)).[2]

A.      Appropriate and Effective Notice.

The Court's Order Preliminarily Approving Settlement and Providing for Notice (Doc. 123) required the mailing of a legal notice of the Settlement to individual Class Members in a form approved by the Court, as well as publication of a legal notice in online and print versions of newspapers of general circulation in each county where Cook's has a district office.  The Court worked with counsel to correct noted deficiencies in their proposed Class Notices.   After revisions were complete, the Court found the Class Notices complied with Fed. R. Civ. P. 23(c)(2)(B) because they:

> clearly and concisely state[d] in plain, easily understood language:
> (i)   the nature of the action;
> (ii)  the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv)  that a class member may enter an appearance through an attorney if the member so desires;

---

[2]In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

(v) that the court will exclude from the class any member who request exclusion;
(vi)  the time and manner for requesting exclusion; and
(vii) the binding effect of a class judgment on members under Rule 23(e)(3).

The notices also directed recipients to a toll-free number they could call for additional information and to obtain access to a website.  The website contained a plethora of information regarding the Settlement: general information about the case; a "Frequently Asked Questions" section; links to the Claim Form, Claim Form Instructions, Fair Credit Reporting Act Disclosure and Authorization Form, the Settlement Agreement, and the Class Notice; relevant case deadlines; instructions regarding Class Member address changes; instructions for opting out or filing objections to the Settlement; and contact information for Class counsel, Cook's counsel, the Claims Administrator, and the Court.      Fed. R. Civ. P. 23(e)(1) requires notice to be given "in a reasonable manner."  "[W]hen courts have evaluated whether settlement notice is adequate, the focus is not on actual notice rates, but rather whether the best notice practicable to individuals under the circumstances was achieved through reasonable effort."  *Turner*, 472 F. Supp. 2d at 840 (citing *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 944 (10th Cir. 2005)).  "Rule 23's mandate that absentee class members be given 'the best notice practicable under the circumstances,' Fed.R.Civ.P.

23(c), is consistent with the due process requirements of the Constitution." *Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1287 n.5 (11th Cir. 2007).

In order to reach potential Class Members, 14,563 Class Notices were mailed to all known job applicants during the time period at issue, regardless of race, at the address on file with Cook's. The Class Notices repeatedly stated that only African-Americans were eligible to participate in the Settlement. When notices were returned as undeliverable, the Claims Administrator attempted a trace to locate a current address. If an alternative address was located through a trace or provided by the U.S. Postal Service, the Class Notices were remailed. In order to reach potential Class Members whose applications may have been lost or destroyed, the parties published Class Notices in 27 newspapers, 19 of which had online versions, in every county where Cook's has a district office. The published notices proved effective; a number of claim forms were received from individuals to whom no notice was mailed. Given the information known and available to the parties, the Court finds that the Class Notices in this case were distributed "in a reasonable manner." Counsel for the parties have achieved the best notice practicable through reasonable effort.

B.    Class Certification.

The parties settled this action prior to class certification. "Confronted with a request for settlement-only class certification, a district court need not inquire whether

the case, if tried, would present intractable management problems," as required under Fed. R. Civ. P. 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "But other specifications of the Rule-those designed to protect absentees by blocking unwarranted or overbroad class definitions-demand undiluted, even heightened, attention in the settlement context." *Id.* "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.* The U.S. Supreme Court has emphasized that district court may not disregard the requirements of Fed. R. Civ. P. 23(a) and (b), and "substitute for Rule 23's certification criteria a standard never adopted-that if a settlement is 'fair,' then certification is proper." *Id.* at 622.

Because the undersigned found that the Rule 23(a) and (b) standards were satisfied, the settlement class was preliminarily certified, and notice to the proposed class was required. A summary of the Court's findings of fact and conclusions of law on these issues is warranted on final approval.

1.    Fed. R. Civ. P. 23(a).

Under Fed. R. Civ. P. 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims or defenses of the representatives are typical of the claims and defenses of the unnamed members; and (4) the named representatives will be

able to represent the interests of the class adequately and fairly." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187-88 (11th Cir. 2003). These four prerequisites are generally known as "numerosity, commonality, typicality, and adequacy of representation." *Id.* at 1188. While the prerequisites are often discussed in isolation, the inquiries necessary to determine whether they are met tend to overlap. *See Amchem Prods.*, 521 U.S. at 626 n.20 ("The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.") (internal citations omitted).

The numerosity element requires that the members of the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). No third party nor objector has appeared to dispute the numerosity factor. Here, 14,563 Class Notices were mailed to potential class members. The Claims Administrator received approximately 908 calls on the toll-free number and gave out around 272 user names and passwords. 558 claim form packets were mailed in response to requests on the toll-free number, and more claim forms were downloaded from the website. As of the claims deadline, 495 claim forms were received. It appears that nine of those claimants

are ineligible, and approximately 195 forms will require further investigation, as explained above.  Even if the Court assumed all 195 claimants were found ineligible, the class is sufficiently numerous to meet the requirements of Rule 23(a).  *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

"Commonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members.'"  *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).  Plaintiffs contend that Cook's engaged in a widespread, uniform pattern or practice of discrimination that resulted in African-Americans being denied employment. Plaintiffs' claims focus on a pattern of discrimination, not on individual fact situations.  Every member of the potential class would have to prove his or her claim using the same statistical analysis.  For the purposes of settlement, the parties agree that this alleged pattern of discrimination satisfies commonality, and no objector or third party has disputed that assertion.  Accordingly, the Court finds the commonality element is satisfied. Plaintiffs' complaint raises common questions of fact and law sufficient to meet the "low hurdle of Rule 23(a)(2)."  *Williams*, 568 F.3d at 1356.

Typicality is satisfied if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  *Id.* at 1357 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332,

1337 (11th Cir. 1984)).  "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Id.* (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001)).  Here, the Named Plaintiff's claim and the claims of the Class Members arise from the same alleged pattern or practice of discrimination.  All contend that they applied for employment with Cook's and were denied because of their African-American race.  The typicality element is satisfied.

"The adequacy-of-representation requirement 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'"  *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).  The Court is not aware of any conflicts of interest between the Named Plaintiff and Class Members.  Despite the complexities that have arisen in attempting to prove a pattern and practice of widespread race discrimination, the Named Plaintiff has continued to vigorously prosecute this action for years.  Moreover, Plaintiffs' attorneys have demonstrated extensive experience as litigators in federal court class action litigation. For these reasons, the Court concludes that the Named Plaintiff has adequately

represented the class, and the requirements of Fed. R. Civ. P. 23(a) have been established.

>2.    Fed. R. Civ. P. 23(b).

However, the proposed class must also meet the requirements of one of the three class types found in Fed. R. Civ. P. 23(b).  Here, the parties have stipulated to the certification of a Rule 23(b)(2) and Rule 23(b)(3) settlement class.

In order "[t]o qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc.*, 521 U.S. at 615 (quotations omitted).  "Rule 23(b)(3) includes a nonexhaustive list of factors pertinent to a court's 'close look' at the predominance and superiority criteria:

>(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* at 615-16 (quotations omitted).

In the settlement context of this case, there are no disputes undermining class certification.  The Class Members allege that they have been harmed by the same widespread pattern or practice of race discrimination in hiring.  This is not a situation where, "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Williams*, 568 F.3d at 1357.  Given the nature and amount of discovery involved to prove just one Class Member's claim of pattern or practice discrimination, concentrating the litigation of the Class Members' claims in one forum is highly desirable.  No party has located nor identified other litigation concerning this controversy by Class Members against the Defendant.  Furthermore, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, . . . for the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620 (citation omitted).  Accordingly, certification is appropriate under Fed. R. Civ. P. 23(b)(3).

"Certification of a class under subsection (b)(2) is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Williams*, 568 F.3d at 1359 (quoting Fed. R. Civ. P. 23(b)(2)).

"Monetary damages are legal relief that can only be awarded in a Rule 23(b)(2) class action when the damages sought are incidental to the claims for equitable and declaratory relief." *Id.* (quotations omitted). "[T]he advisory committee's note to Rule 23 explains that certification under section (b)(2) is not proper in cases in which the appropriate final relief relates exclusively or predominantly to money damages." *Id.* (quotations omitted).

When a class is certified under Fed. R. Civ. P. 23(b)(3), a "hybrid" class action can be certified under Fed. R. Civ. P. 23(b)(2) in some cases. "Since in theory there should be no hard requirement that (b)(2) be mutually exclusive, and since subpart (c)(4)(A) allows an action to be maintained with respect to particular issues, the fact that damages are sought as well as an injunction or declaratory relief should not be fatal to a request for a (b)(2) suit, as long as the resulting hybrid case can be fairly and effectively managed." *Id.* (quoting *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1158 n.10 (11th Cir. 1983).

In this case, Cook's is alleged to "have acted or refused to act on grounds that apply generally to the class," by failing to hire the Class Members as part of a widespread pattern or practice of race discrimination in hiring. The predominant relief requested is a consent decree requiring implementation of new hiring procedures, training programs, and methods of record keeping, as well as the institution of a monitor to oversee the decree. The parties also request a Court order enjoining Cook's from violating the decree or discriminating against African-Americans in employment based on their race. Because

the predominant relief requested is equitable, and individual damages are easy to calculate and manage based on the formula agreed upon by the parties, certification is appropriate under both  Fed. R. Civ. P. 23(b)(2) and (b)(3).

C.      Fairness of the Settlement Agreement

Fed. R. Civ. P. 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." While Rule 23(e) does not provide any standards or guidelines for settlement approval, it is well-established in this Circuit that "in order to approve a settlement, the district court must find that it 'is fair, adequate and reasonable and is not the product of collusion between the parties.'" *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  When examining the fairness, adequacy, and reasonableness of a settlement, the Eleventh Circuit requires a district court to examine a number of factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009) (quoting

*Bennett*, 737 F.2d at 986), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010).

Whether to approve a settlement in a class action lawsuit is a decision "left to the sound discretion of the trial court," and the trial court's decision will not be overturned "absent a clear showing of abuse of that discretion." *Bennett*, 737 F.2d at 986. "Settlement is generally favored because it conserves scarce judicial resources." *In re Smith*, 926 F.2d 1027, 1029 (11th Cir. 1991) (citing *Cotton*, 559 F.2d at 1331)). In short, "[T]he judge must guard against the temptation to become an advocate—either in favor of the settlement because of a desire to conclude the litigation, or against the settlement because of the responsibility to protect the rights of those not parties to the settlement. In reviewing the settlement the judge is called upon to be impartial and neutral, favoring neither the proponents of the settlement nor those who are opposed or absent." *Id.* (quoting Moore's Federal Practice, Manual for Complex Litigation 2d § 23.14 at 160 (1986)).

1. The Likelihood of Success at Trial

The Court is familiar with the facts and law of this case and the legal standards that apply. On a number of occasions, the Court has been very involved in supervising the litigation and resolving extensive discovery disputes. Given this familiarity, the Court believes that good cause exists for the parties to resolve this case.

It is virtually impossible to predict a likely result at trial.  Proving this pattern or practice discrimination case requires statistical analysis of massive amounts of documents.  Plaintiffs believe they have accumulated sufficient evidence to prevail, but Defendant has raised significant legal and factual issues that could reduce or completely eliminate a class recovery.  The parties have invested years in this litigation at significant cost to both sides.  A trial and probable appeal would only add exponentially to the costs of litigation and serve to further reduce any potential recovery for Class Members.  For these reasons, the Court finds that the risks faced by the parties and the difficulty in managing a trial or hearing weigh in favor of accepting the Settlement.

> 2.   The Range of Possible Recovery and the Point on or Below the Range of Possible Recovery at Which a Settlement is Fair, Adequate, and Reasonable .

The relief sought in the Settlement is reasonable and within the range of remedies permitted by law.  While Class Members' damages could exceed the amount provided in the Settlement, the Plaintiffs have no guarantee they will prevail.  When the Settlement is taken as a whole, the relief proposed is fair, adequate, and reasonable when compared to the range of possible recovery in this action.

> 3.   The Complexity, Expense, and Duration of Litigation.

As previously discussed, this is a complex case that will only get more expensive and time consuming.  The parties have litigated this action for five years, and many legal issues have not yet been raised for disposition by the Court.  That process could take

many more years, increasing expenses for both sides and potentially reducing the amount that would be available for recovery by Class Members. This factor weighs heavily in favor of approving the Settlement.

      4.     The Substance and Amount of Opposition to the Settlement.

In assessing whether a proposed settlement is fair, adequate, and reasonable, the Court must "examine the settlement in light of the objections raised." *Cotton*, 559 F.2d at 1331. "In assessing the fairness of a proposed compromise, the number of objectors is a factor to be considered but is not controlling." *Id.* "[A] low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (citing *Bennett*, 737 F.2d at 986). "[A] high percentage of objections signals that a proposed settlement is not fair and reasonable." *Id.*

As noted previously, the Settlement has met with overwhelming approval by the Class Members. The deadline for objections and opt-outs was April 12, 2012. No Class Members have objected or opted out, despite notices being sent to all job applicants that could be located, regardless of race, and publication of notices in 27 newspapers in four states. The complete absence of opposition is powerful evidence that the proposed relief provides significant and material benefits to the Class Members and the Settlement is fair, reasonable, and adequate in all respects.

5.      The Stage of Proceedings at Which the Settlement Was Achieved.

The Settlement was achieved after nearly five years of litigation and extensive discovery. The parties took depositions of key witnesses, argued motions to compel and motions for protective orders, and reviewed thousands of pages of legal documents related to the claims and defenses in this case. Both parties and the Court are familiar with the legal and factual issues and have an adequate appreciation of the merits of this case. The litigation is still at an early enough stage, however, that settlement will avoid substantial expense for all involved. This factor also counsels in favor of approving the Settlement.

6.      Lack of Collusion.

Finally, the Court is required to determine the possible existence of fraud or collusion. The record demonstrates that the Settlement was negotiated by capable, experienced counsel in good faith and at arms' length, after extensive, difficult, and lengthy negotiations involving a skilled mediator. The mediation process, itself, took nearly ten months. Class Members have universally accepted the terms of the Settlement by choosing not to object or opt-out. And, neither the Named Plaintiff nor any counsel has an interest in the residual Settlement Fund after all awards are paid. If there is a residual, it will be donated to the United Negro College Fund. In short, there is

absolutely no evidence of fraud, collusion, or any other improper conduct in the settlement negotiations or the resulting proposed Settlement.

Because all factors weigh in favor of settling this class action, the Court finds that the proposed Settlement is fair, adequate, and reasonable, and not the product of fraud, collusion, or any other improper conduct.

IV.    Service Award.

The Settlement proposes that the Named Plaintiff, Marion Waters, receive a Service Award for his participation in this action and his service to the settlement class. The parties have agreed that the Service Award will be paid from the Settlement Fund and will equal one and one-half times the maximum amount paid to a Class Member.

"While the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action.  In fact, "'[c]ourts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006) (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001)).

The Court finds that the proposed Service Award in this action is fair and reasonable under the circumstances.  For nearly five years, Marion Waters has born the

burden of acting as the sole class representative in this action.  Marion Waters consulted with several attorneys in order to engage the best representation for him and the members of the class.  Discovery has been contentious from the start.  The record shows that the Marion Waters assisted Class Counsel in preparing for depositions and discussing case strategy.  He kept up with the progress of the case and participated directly in mediation sessions.  Marion Waters also attended the preliminary approval hearing.  In his own words:

> I have taken time away from both work and personal obligations, held myself up to public scrutiny and ridicule and forever associated my name and reputation with a cause I believed, but which has exposed me to potential risks and scorn in some quarters of the community.

(Waters Decl. ¶ 23.)  No one has objected to the proposed Service Award, and the Court has found there is no evidence of collusion.  Accordingly, the Service Award is approved.

V.    Attorneys' Fees.

Class Counsel request 35% of the Settlement Fund as attorneys' fees ($875,000.00), plus litigation expenses in the amount of $53,831.55.  "The district court has wide discretion to award attorneys' fees based on its own expertise and judgment because of 'the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.'" *Dikeman v. Progressive Exp. Ins. Co.*, 312 Fed. Appx. 168, *171 (11th Cir. 2008) (quoting

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).  "Yet, the district court's discretion is not unlimited, and '[a] conclusory statement that a fee is reasonable in light of the success obtained is generally insufficient.'" *Id.* (quoting *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988)).  "The court's order on attorney's fees must allow for meaningful review—the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation." *Norman*, 836 F.2d at 1304.

"There is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Camden I Condominium Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). The "majority of common fund fee awards fall between 20% to 30% of the fund." *Id.*  "To avoid depleting the funds available for distribution to the class, an upper limit of 50% of the fund may be stated as a general rule, although even larger percentages have been awarded." *Id.* at 774-75.  However, the "benchmark" range of 20% to 30% "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775.  "The factors which will impact upon the appropriate percentage to be awarded as a fee in any particular case will undoubtedly vary." *Id.*  The Court is instructed to consider the twelve factors set forth in *Johnson v.*

*Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir.1974).[3] *Camden I*, 946 F.2d at 775. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Id*. The district court must "identify all factors upon which it relied and explain how each factor affected its selection of the percentage of the fund awarded as fees." *Id*.

In obtaining the Settlement, Class Counsel have recovered a determinate fund of $ 2.5 million for the benefit of all Class Members, exclusive of injunctive and declaratory relief. Their request for an award of attorneys' fees in the amount of $875,000.00, or 35% of the fund, is reasonable given the time and labor required of Class Counsel, the difficulty of the questions at issue in this litigation, the skill and experience of Class Counsel, the customary fee for cases of this nature, Class Counsel's contingent fee risk and financial contribution to the case, the undesirability of the case, and the results obtained.

---

[3]The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717-19.

A.     Time and Labor Required.

"Although the hours claimed or spent on a case should not be the sole basis for determining a fee, . . . they are a necessary ingredient to be considered." *Johnson*, 488 F.2d at 717.   This factor requires the Court to examine the number of hours actually expended, multiplied by a reasonable hourly rate for attorneys with similar skill and experience practicing in the same area.   Over the course of five years of litigation in this action, Class Counsel have expended 2,466.30 hours.   Although there are three separate law firms involved, the firms divided their labor and ensured work was not duplicated. Multiplying 2,466.30 hours by the reasonable hourly rates routinely charged yields a total figure of $1,076,140.00.   Because the requested amount of $875,00.00 falls well below the calculated fees, this factor heavily weighs in favor of awarding attorneys' fees in the amount of 35% of the Settlement Fund .

B.     Novelty and Difficulty of the Questions at Issue.

"Cases of first impression generally require more time and effort on the attorney's part."   *Id.* at 717.   This case involved evidence of racial coding of employment applications.   As noted in the declaration of Professor Harry Hopkins, a professor of labor law at the University of Alabama School of Law, such a case is extremely rare, and disparate impact litigation alone involves incredibly complex  discovery problems for plaintiffs' counsel. (Doc. 132-5.) Defense counsel presented a vigorous defense at every

stage of the case, requiring multiple hearings on motions to quash and motions for protective orders.  This factor also weighs in favor of the attorneys' fee requested.

C.    Skill Requisite to Perform the Legal Service Properly.

This is a class action case involving an area of employment law where few lawyers dare tread.  Class Counsel have set forth their qualifications in their declarations.  The skill necessary to litigate this case, despite the consistently tough opposition of reputable law firms with significant resources, is high. Accordingly, this factor weighs in favor of approving the requested fees in the amount of 35% of the Settlement Fund.

D.    Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case.

"This guideline involves the dual consideration of other available business which is foreclosed because of conflicts of interest which occur from the representation, and the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes."  *Johnson*, 488 F.2d at 718.  There is no doubt that the amount of hours required to prosecute this action limited the amount of time and resources that Class Counsel was available to devote to other matters over the period of this litigation.  However, Class Counsel has not offered any evidence that it actually turned down other business because of this case.  This factor is neutral for the consideration whether to award the slightly enhanced fee of 35% of the Settlement Fund.

E.     Customary Fee.

The rates charged by Class Counsel are well within the customary fees charged for comparable service.  Wiggins Childs Quinn & Pantazis, LLC, customarily enters into contingent fee agreements allowing for recovery of 33% in low risk cases with uncontested or moderately contested liability, and up to 49% in higher risk cases with difficult liability issues. (Doc. 132-1 ¶ 43).  Although this would certainly qualify as a "higher risk" case with difficult liability issues, the fee percentage requested in this case is at the lower end of that range.  This factor weighs in favor of approving the requested fees in the amount of 35% of the Settlement Fund.

F.     Whether the Fee is Fixed or Contingent and the Economics of Prosecuting a Class Action.

"The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fees expectations when he accepted the case." *Johnson*, 488 F.2d at 718.  Class Counsel accepted this matter on a contingent basis.  They have incurred significant expenses in prosecuting this action over the course of five years and received no compensation.  They have spent more time on this case than they will be compensated for at their customary rates.  Throughout the years, there has been a real possibility that Class Counsel would not recover anything for the Class.  For these reasons, this factor supports the approval of the requested amount of attorneys' fees.

G.    Time Limitations Imposed by the Client or the Circumstances.

"Priority work that delays the lawyer's other legal work is entitled to some premium. This factor is particularly important when new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson*, 488 F.2d at 718. Class Counsel have not identified any deadlines that delayed their other work such that an enhanced attorneys' fee award is justified. This factor is neutral.

H.    Amount Involved and the Results Obtained.

Class Counsel have recovered a determinate fund of $ 2.5 million for the benefit of all Class Members, exclusive of injunctive and declaratory relief. The monetary award for each Class Member is expected to be several thousand dollars. Considering the complexities of this case and the vigorous defense of opposing counsel, this is an excellent recovery when there was a very real chance the Class would not recovery anything. This factor definitely supports the slightly enhanced attorneys' fee of 35% of the Settlement Fund.

I.    Experience, Reputation, and Ability of the Attorneys.

The court is familiar with the experience, reputation, and ability of Class Counsel and Defendant's counsel. Class Counsel have set forth their qualifications and prior experience in declarations. This case has, at all stages, been handled on both sides by very experienced and talented lawyers whose reputations for effective handling of

complex litigation are well known throughout Alabama. This factor also weighs in favor of awarding the requested fee of 35% of the Settlement Fund.

J.      Undesirability of the Case.

The Court has already discussed the complex discovery issues involved in proving a disparate impact case. The expense and time involved in prosecuting such litigation on a contingent basis, with no guarantee or high likelihood of recovery, would make this case highly undesirable for many attorneys. Therefore, this factor, too, supports the requested amount of attorneys' fees.

K.      Nature and Length of the Professional Relationship with the Client.

Class Counsel were not representing long-term clients in this matter. This factor is neutral.

L.      Awards in Similar Cases.

"The reasonableness of a fee may also be considered in light of awards made in similar litigation within and without the court's circuit." *Johnson*, 488 F.2d at 719. Neither Class Counsel nor the Court were able to locate instances of factually-similar litigation or similar recoveries in cases with comparable class sizes. However, an award of 35% of the Settlement Fund is well within the range of 20% to 50%, which has been generally established in this circuit. *Camden I*, 946 F.2d at 771. This factor is also neutral.

M.     Time Required to Reach a Settlement.

The mediation process, start to finish, took almost a year.  The parties selected a skilled mediator and agreed to additional discovery and review to facilitate settlement. The parties held two formal mediation sessions and nine informal conferences in order to reach a resolution of matters and draft the specific terms of the Settlement Agreement. This factor supports the requested fee of 35% of the Settlement Fund.

N.     Any Non-Monetary Benefits Conferred Upon the Class by the Settlement.

In addition to each Class Member receiving a monetary award that is expected to be several thousands of dollars, Class Counsel has negotiated a Settlement Agreement that provides other non-monetary benefits.  In fact, as outlined above, the predominant relief requested is equitable.  Namely, a consent decree will be entered requiring Cook's to implement new hiring procedures, training programs, and methods of record keeping, and a monitor will be instituted to oversee the decree.  The Court will also enjoin Cook's from violating the decree or discriminating against African-Americans in employment based on their race.  This factor strongly weighs in favor of the slightly enhanced attorneys' fee of 35% of the Settlement Fund

O.     Objections by Class Members or Other Parties to the Settlement Terms or the Fees Requested by Counsel.

Opposing Counsel has not objected to the terms of the Settlement Agreement or the fees requested by Class Counsel.  Out of hundreds of Claimants, no one has objected

to the terms of the Settlement Agreement.  In the Class Notices, Class Counsel notified potential claimants that they would be seeking up to 40% of the Settlement Fund as attorneys' fees; there was no objection.

In order to ensure compliance with all notice provisions, however, the parties mailed a separate notice to Claimants, informing them of their petition for attorneys' fees in the amount of 35% of the Settlement Fund, plus expenses, and Claimants' right to object and appear at the hearing on attorneys' fees on July 5, 2012.  No one appeared at the hearing to voice an objection.  Only one claimant filed an objection to the amount of attorneys' fees and expenses.  (Doc. 137.)  However, the objecting claimant also acknowledged the quality of Class Counsel and did not appear to speak at the hearing. In the written objection, the individual claimant notes that she is "eternally grateful for the effort all of the attorneys have put forth to correct the injustice perpetrated by Cook's . . . However I think the amount of . . . 35% is excessive.  Most lawsuit fees are limited to 33% of the award amount.  I strongly feel it should be the same in this case."  (*Id.*)

As discussed previously, this is not "most lawsuits."  This is a high risk case with difficult discovery and liability issues.  Class Counsel have obtained an outstanding result for Class Members.  This factor supports awarding the amount requested.

Having considered all the factors outlined above, the Court finds that it is fair and reasonable to award Class Counsel fees in the amount of $875,000.00, or 35% of the Settlement Fund.

VI.    Expenses.

Class Counsel also request reimbursement of costs and expenses in the total amount of $53,831.55.  "Upon submission of adequate documentation, plaintiffs' attorneys are entitled to reimbursement of those reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class."  *In re "Agent Orange" Prod. Liab. Litig.*, 611 F.Supp. 1296, 1314 (E.D. N.Y. 1985), *modified on other grounds,* 818 F.2d 226 (2d Cir. 1987), *quoted by Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999).  The district court has a "responsibility to scrutinize the costs for which reimbursement is requested in order to ensure that class counsel is not obtaining a secret or unintended profit."  *Int'l Precious Metals Corp.*, 190 F.3d at 1298.

Class Counsel have submitted a summary of their expenses and receipts in support. At the hearing on attorneys' fees on July 5, 2012, the Court questioned Class Counsel at length about some items for which the Court needed information to gauge the reasonableness of the charges.  After full review, the Court is convinced that the charges submitted are "reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class."  There is no indication that Class Counsel have

inflated the expenses claimed in order to realize a secret profit.  The Court will award

Class Counsel expenses in the amount of $53,831.55.

VII.   Conclusion

For the reasons outlined above, the Court will enter separate orders that:

1.   Approve the proposed Settlement and finds that the Settlement is fair, adequate and reasonable, and not the product of collusion among the parties;

2.   Order the equitable relief requested in the Settlement;

3.   Order that this action shall be dismissed with prejudice;

4.   Approve the request for a Service Award for the Named Plaintiff; and

5.   Grant Class Counsel's motion for attorneys' fees in the amount of $875,000.00, and expenses in the amount of $53,831.55.

Done this <u>17th</u> day of <u>July 2012</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297